UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOHN E. LOHMANN,

                Plaintiff,

v.                                                            Case No. 5:07-cv-387-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 13) and both parties have filed briefs outlining their respective positions. (Docs. 18 & 20.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On June 23, 2002, Plaintiff filed an application for a period of disability and disability insurance benefits claiming a disability onset date of October 31, 2000. (R. 46-48.) Plaintiff's application was denied initially (R. 38-39), and upon reconsideration. (R. 41-42.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 37.) ALJ David G. Danziger conducted Plaintiff's administrative hearing on May 20, 2004. (R. 142-65.) On March 14, 2005, ALJ Danziger issued a decision partially favorable to Plaintiff finding that he was disabled as of June 23, 2003. (R. 10-

17.) The Appeals Council denied Plaintiff's request for review (R. 4-6) and Plaintiff filed the instant appeal to this Court on September 24, 2007. (Doc. 1.)

Plaintiff had previously applied for disability insurance benefits on July 27, 2000 and that claim was denied by another ALJ on April 16, 2002.  The decision was not reviewed by the Appeals Council.  ALJ Danziger found that Plaintiff's "non-disability through [April 16, 2002] is Res Judicata and administratively final." (R. 13.)  Plaintiff does not challenge the finality of the earlier decision.  Accordingly, the instant appeal focuses on whether Plaintiff was disabled from April 17, 2002 through June 22, 2003.

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on June 23, 1948 and was fifty-six (56) years old at the time of the hearing. (R. 146.) Plaintiff has a GED and past relevant work as a painter. (R. 56, 61, 148.) Plaintiff contends that he has been unable to work due to pain in his neck, shoulders, arms, back and legs and blurry vision. (R. 55.)

---

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

The medical records are very limited in this case. On March 15, 2002, Plaintiff was seen by Walter I. Choung, M.D. for complaints of pain in the cervical spine, lumbar spine, shoulders, and right knee with occasional pain radiating into his hands and lower extremities, periodic numbness in the left face and chronic weakness in the left upper extremity. (R. 92-93.) X-rays of the left shoulder, pelvis and right knee showed only early or mild degenerative changes. On examination, Plaintiff's cervical spine and lumbar spine had limited range of motion, with tenderness to palpation. There was diffuse weakness in Plaintiff's entire left upper extremity but no focal atrophy or weakness. There was no focal deficit in the lower extremities and Plaintiff's motor exam was 5/5. The range of motion for Plaintiff's right knee was 0-130 degrees; there was crepitus with range of motion; and tenderness to palpation anteriorly.

Dr. Choung referred Plaintiff to Gopal Tatambhotla, M.D. for a neurological examination on March 20, 2002. (R. 84-90.) Plaintiff's chief complaints were neck pain, left arm numbness, difficulty opening or closing both hands, back pain, pain around his hips bilaterally, headaches, blurred vision and wobbly gait. Plaintiff reported smoking half a pack of cigarettes per day. On examination, Dr. Tatambhotla noted weakness in Plaintiff's left upper extremity; deep tendon reflexes were 2+ in upper extremities, 1+ at left knee and absent in the right knee and both ankles; and normal gait.

On September 18, 2002, Plaintiff was seen by David R. Miller, D.O. for a consultative evaluation. (R. 94-95.) Plaintiff reported that he cannot lift more than 30 pounds, climb more than two flights of stairs or do any amount of work that requires repetitive bending, twisting, kneeling, crawling, crouching or balancing. He admitted to smoking a pack of cigarettes a day. Dr. Miller's diagnostic impressions were

6

osteoarthritis, a history of work-related injuries to the left shoulder and right knee, tobacco abuse, chronic obstructive pulmonary disease, and anxiety. However, the physical examination revealed minimal signs of dysfunction. Muscle strength was 5/5 bilaterally; supine leg raising was limited to 45 degrees on the right and 60 degrees on the left; plaintiff walked with a mild limp but did not require an assistive device for ambulation. However, Plaintiff did exhibit pain getting on and off the examination table, in and out of the supine position.

On October 16, 2002, Plaintiff was referred to Edward L. Demmi M.D. by the Office of Disability Determinations for x-rays and a pulmonary function test. (R. 98-101.) The chest x-rays showed signs of long-term smoking; x-rays of the lumbosacral spine revealed minimal degenerative changes to the L5-S1 posterior intravertebral area, otherwise normal and good alignment; and x-rays of the right knee revealed mild narrowing of the lateral space and mild degenerative changes and otherwise essentially normal. The pulmonary function tests were essentially normal with a good effort. Pre-medication testing indicated borderline obstruction with a FVC of 111%, FEV1 of 81%, %FEV1 of 72%, and FEF25%-75% of 34%.

There are two Physical Residual Functional Capacity (RFC) Assessments in the record, completed by non-examining state agency doctors – Donald Warren Morford, M.D. on October 31, 2002 (R. 102-09) and Nicholas H. Bancks, M.D. on January 6, 2003. (R.110-17.) Based on their review of the medical records, both Morford and Bancks found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and push and/or pull without limitation. They also limited Plaintiff to occasional

climbing, balancing, stooping, kneeling, crouching, crawling and reaching overhead. They also found that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases and hazards.

Plaintiff testified that he began treatment at the VA Hospital on September 28, 2003. (R. 153-54.) Progress notes from the VA Hospital dated October 9, 2003 revealed a fairly normal physical examination. (R. 122-41.) While muscle spasm was present in Plaintiff's neck and upper back, his gait was coordinated and smooth, he had no muscle atrophy or weakness, straight leg testing was negative, and the right knee showed crepitance on passive range of motion, but had a full range of motion. Plaintiff denied feeling unhappy, depressed or anxious. In a progress note dated May 7, 2004 it was noted that Plaintiff continued to smoke and was not interested in quitting at that time. (R. 122.)

At the hearing, Plaintiff testified that he has trouble with his back, neck, legs and headaches. (R. 154, 158.) He testified that he could stand and walk about 20 minutes and then his legs get weak and feel numb. (R. 153.) Plaintiff reported constant pain of 5 or 6 on a scale of 1 to 10. (R. 159.) Plaintiff admitted smoking about half a pack of cigarettes a day. (R. 154.) Plaintiff testified that he gets dizzy. (R. 158.) Plaintiff testified that his girlfriend does the cooking and the shopping but that he does some vacuuming. (R. 160-61.) He testified that he watches television but that he does not go to the movies or do any of the yard work. (R. 163.)

The ALJ determined that claimant suffers from chronic obstructive pulmonary disease and degenerative joint disease of the back, hips, right shoulder, and right knee. (R. 15.) While these impairments are severe, the ALJ determined that Plaintiff did not

8

have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (*Id.*)

The ALJ found that prior to June 23, 2003, Plaintiff retained the physical RFC to engage in a full range of light work. (R. 14-15.) After finding that Plaintiff could not perform his past relevant work prior to June 23, 2003, the ALJ used Rule 202.14 of the Medical-Vocational Guidelines (the "grids")[22] and found that Plaintiff was not disabled. (R. 15.) However, as of June 23, 2003, Plaintiff attained age 55; and in view of his RFC limited to light work at most, and after considering his age, GED education, and vocational history without transferable work skills, the ALJ applied Rule 202.06 of the grids which directed a conclusion of "disabled." (Id.) The ALJ explained that Plaintiff's age was the only reason for finding that significant numbers of jobs no longer existed that Plaintiff could be expected to perform. (Id.) The ALJ did not consult a vocational expert.

## IV. DISCUSSION

Plaintiff only raises one argument on appeal – i.e., that the ALJ erred by relying solely on the grids without the testimony of a vocational expert. Because the ALJ found that Plaintiff could not return to his past relevant work, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[23] The burden of showing by substantial evidence that a person who

---

[22] 20 CFR Pt. 404, Subpt. P. App.2 Rules 202.18 and 202.11.

[23] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

can no longer perform his former job can engage in other substantial gainful activity is in most cases satisfied only through the use of vocational expert testimony.[24]  However, when the claimant can clearly do unlimited types of work at a given residual functional level it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[25]  Exclusive reliance on the "grids" is not appropriate "*either* when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."[26]

Here, the ALJ found that prior to June 23, 2003, Plaintiff retained the RFC to perform a full range of light work[27] and then, using Rule 202.14 of the grids, the ALJ concluded that Plaintiff was not disabled.  However, the ALJ found that Plaintiff became disabled on June 23, 2003 – the date he attained the age of 55.   In finding Plaintiff disabled as of June 23, 2003, the ALJ did not find that Plaintiff's pain increased after that date or that his medical condition had worsened; rather, the ALJ explained that Plaintiff was found to be disabled because he attained the age of 55 and became a person "of advanced age."

---

[24] See id.

[25] See id.

[26] See Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(quoting Francis v. Heckler, 749 F.2d 2565, 1566 (11th Cir. 1985.)

[27] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  A job in this category requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm and leg controls.  20 CFR §404.1567(b).

Plaintiff argues that the ALJ was required to consult a vocational expert because Plaintiff could not perform a full range of light work based on Plaintiff's limited range of motion in his cervical spine and lumbar spine, pain in his right knee, chronic obstructive pulmonary disease and anxiety. While Plaintiff recites lengthy medical records in his memorandum, he does not explain how these medical records support a finding that Plaintiff is unable to perform a full range of light work or that Plaintiff has nonexertional impairments that significantly limit basic work skills. Plaintiff's view is that simply because the ALJ recognized he has these impairments, the mere presence of these limitations automatically precludes reliance on the grids. That is not the case. Limitations resulting from Plaintiff's impairments and related symptoms may be exertional, nonexertional or a combination of both and such symptoms are considered with the other evidence in the record to determine a Plaintiff's RFC.[28]

The evidence of record in this case does not show that Plaintiff had significant nonexertional limitations or that Plaintiff could not perform a full range of light work as a result of the limited range of motion in his cervical and lumbar spine and pain in his right knee. A review of the medical records fully supports this conclusion.

During a March 15, 2002 examination, while Plaintiff's cervical spine and lumbar spine were tender, with a limited range of motion, x-rays of the left shoulder, pelvis and right knee showed only early or mild degenerative changes. (R. 92-93.) Further, an April 3, 2002, electromyography showed only very mild median nerve neuropathy at the wrist and no evidence of ulnar neuropathy or cervical radiculopathy on the left side. (R.

---

[28] 20 CFR. §§404.1529(a), 404.1545(a), and 404.1569a(a).

90.) Moreover, Dr. Miller's September 18, 2002, examination revealed minimal signs of dysfunction. Plaintiff's muscle strength was 5/5 bilaterally; supine leg raising was limited to 45 degrees on the right and 60 degrees on the left; and Plaintiff walked with a only mild limp, which did not require an assistive device for ambulation. (R. 94-95.) On October 16, 2002, Dr. Demmi described x-rays of the lumbosacral spine as showing minimal degenerative changes to the L5-S1 posterior intravertebral area with good alignment. Further, x-rays of the right knee revealed only mild narrowing of the lateral space and only mild degenerative changes. (R. 98.) Progress notes from the VA Hospital, as well, revealed fairly normal physical examinations. (R. 122-41.) While muscle spasm was present in Plaintiff's neck and upper back, Plaintiff's gait was coordinated and smooth, he had no muscle atrophy or weakness, no myalgia, arthralgia, swollen joints, leg cramps or loss of muscle strength, no pretibial edema, no clubbing, no cyanosis, straight leg testing was negative, and although his right knee showed crepitance on passive range of motion, he, nonetheless, had a full range of motion.

    Likewise, the medical records do not show that Plaintiff's chronic obstructive pulmonary disease caused disabling nonexertional limitations or precluded the performance of a full range of light work. The record is clear that Plaintiff smoked at least a half a pack of cigarettes per day and that he repeatedly declined to quit smoking. (R. 85, 94, 122, 125-26, 129, 154.) Moreover, Plaintiff's pulmonary function test on October 16, 2002 was essentially normal (R. 98) and an examination of Plaintiff's respiratory system on October 9, 2003 was clear to auscultation and percussion. (R. 123.)

Finally, Plaintiff's complaints of anxiety are not supported by the medical evidence. Indeed, it does not appear that Plaintiff ever complained about feelings of anxiety to any doctor (treating or consultative.) Dr. Miller is the only doctor who even mentioned anxiety. (R. 94-95.) While Dr. Miller included anxiety in his diagnostic impression, it is not clear what evidence supported this finding. Plaintiff did not report feelings of anxiety to Dr. Miller and with respect to Plaintiff's psychiatric condition, Dr. Miller merely noted that Plaintiff was "nervous and shaky" during the interview. Moreover, on October 9, 2003, Plaintiff denied feeling unhappy, depressed or anxious. (R. 133.)

Lastly, both of the state agency doctors who completed Physical Residual Functional Capacity (RFC) Assessments – Donald Warren Morford, M.D. on October 31, 2002 (R. 102-09) and Nicholas H. Bancks, M.D. on January 6, 2003 (R.110-17) – concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and push and/or pull without limitation. These findings are consistent with the ability to perform light work as defined in the regulations.[29]

Accordingly, the ALJ's conclusion that Plaintiff could perform a full range of light work is fully supported by substantial evidence. Plaintiff failed to show (let alone even suggest) how his alleged symptoms caused additional exertional or nonexertional limitations that prevented him from performing the full range of light work. As such, the girds provided substantial evidence to support the ALJ's conclusion that Plaintiff was not

---

[29] 20 CFR §404.1567(b)

disabled prior to June 23, 2003. Accordingly, the ALJ did not err by relying on the grids without obtaining vocational expert testimony.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **AFFIRMED.** The Clerk is directed to enter final judgment consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 4, 2009.

*[signature]*
GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel